## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ESSEX ELECTRO ENGINEERS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 09-372 (RJL)** |
| | ) | |
| **UNITED STATES SECRETARY OF** | ) | |
| **THE ARMY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION
(February 26, 2010) [# 13, 15]

Plaintiff, Essex Electro Engineers, Inc. ("Essex"), brings this action against the

U.S. Secretary of the Army (the "Secretary" or "defendant"), for failing to disclose unit

prices pursuant to a request under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552.  Before the Court is the defendant's Motion for Summary Judgment and the

plaintiff's Cross-Motion for Summary Judgment.  Upon consideration of the parties'

pleadings, relevant law, and the entire record herein, the defendant's motion is

GRANTED and the plaintiff's motion is DENIED.

### BACKGROUND

Essex is an Illinois company that submitted an offer on a U.S. Army (the "Army")

solicitation involving electrical feeder and distribution systems.  Compl. ¶¶ 1, 5, & 7.  On

July 10, 2008, the Army awarded Contract W15P7T-08-D-A007 ("Contract-A007") to a

competitor of Essex, Fidelity Technologies Corporation ("Fidelity").  *Id.* ¶ 8.  On July 25,

2008, Essex submitted a FOIA request for "the award document along with the CLIN

[Contract Line Item] pricing for Contract W15P7T-08-D-A007." Def.'s Mot. for Summ. J. ("Def.'s Mot.") Ex. B, Decl. of Caryn L.M. Hargrave ("Hargrave Decl."), Attach. 1.  In response to an Army inquiry regarding the FOIA request, Fidelity indicated that it "object[ed] to the release of information contained within Section B of the Contract that would reveal UNIT PRICE information for all ITEM NUMBERS, 0001 through 0005 (inclusive)." *Id.* at Attach. 4.  Fidelity claimed that such information was proprietary and that it believed "to release pricing data could cause us financial harm as a competitor could derive information related to our business strategy and cost structure." *Id.*  On August 28, 2008, the Army sent Essex a letter responding to its FOIA request and attaching a copy of Contract-A007 with the unit prices for CLINs 0001 through 0010 redacted. *Id.* at Attach. 5.

On September 24, 2008, Fidelity sent a letter to the Army expressing Fidelity's legal bases for redacting the unit prices for CLINs 0001 through 0005. *Id.* at Attach. 11. Fidelity stated that it believed the unit price data were exempt from release under Exemption 4 of FOIA as confidential information, arguing that disclosure would permit "under bidding by competitors on future procurements for the same or similar systems" and "severely limit the ability of FTC to effectively negotiate competitive prices from its subcontractors." *Id.*  Fidelity further asserted that the unit price data would allow competitors and vendors to estimate its mark-up on materials and services and reveal, through range pricing, Fidelity's economies of scale, pricing strategies, and risks it was

2

willing to accept. *Id.* On October 7, 2008, the Army's contracting officer sent the Army's Office of the General Counsel ("OGC") a memorandum for record concurring with Fidelity's decision to redact the unit prices, stating that release of the unit prices "will reveal methodology and business decisions unique to Fidelity and thereby provide an advantage to their competition." *Id.* at Attach. 13.

After some correspondence between Essex and the OGC, on November 20, 2008, Essex requested that the OGC release an unredacted copy of Contract-A007. Def.'s Mot. Ex. A, Decl. of Ronald J. Buchholz ("Buchholz Decl."), Attach. 3. On December 9, 2008, the OGC acknowledged receipt of the appeal letter and forwarded it to the Army's Initial Denial Authority ("IDA"). *Id.* at Attach. 4, 5. In the meantime, the IDA sent a decision letter to Essex on December 3, 2008, informing the plaintiff that the unit prices had been appropriately withheld under Exemption 4 and that the decision was considered a partial denial of its FOIA request and could be appealed. Hargrave Decl. Attach. 15. On December 16, 2008, Essex again requested an unredacted copy of Contract-A007. Buchholz Decl. Attach. 6. On April 13, 2009, the OGC denied the plaintiff's appeal. *Id.* at Attach. 7. On February 23, 2009, Essex filed the instant action.

## ANALYSIS

Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment shall be granted when the record demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing

same).  In a FOIA case, an agency bears the burden of establishing that the search was

adequate and that each responsive document is either produced, unidentifiable, or exempt

from production.  *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485, 1489 (D.C.

Cir. 1984).  In this case, there is no dispute between the parties regarding the adequacy of

the Army's search for responsive documents.  The only issue is the propriety of the

agency's decision to withhold the unit pricing for CLINs 0001 through 0010 pursuant to

Exemption 4 to FOIA.[1]

The Court's review of an agency's justification is *de novo, see* 5 U.S.C.

§ 552(a)(4)(B), but the Court "may rely on affidavits or declarations submitted by the

agency, if those documents describe 'the justifications for non-disclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor

by evidence of agency bad faith.'"  *Suzhou Yuanda Enter., Co. v. U.S. Customs & Border

Prot.*, 404 F. Supp. 2d 9, 12 (D.D.C. 2005) (quoting *Military Audit Project v. Casey*, 656

F.2d 724, 738 (D.C. Cir. 1981)).  For the following reasons, the Court finds there are no

genuine issues of material fact as to the validity of the Army's application of Exemption 4

---

[1]     Although Fidelity indicated that it did not object to the release of the unit pricing
for CLINs 0006 through 0010, *see* Hargrave Decl. Attach. 11, the Army concluded upon
its review of the requested documents that the unit pricing information for CLINs 0001
through 0010 should be withheld pursuant to Exemption 4.  *See* Buchholz Decl. ¶ 13,
Attach. 7.

in this case.

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). It is undisputed that the sole question before the Court is whether this information is confidential.

Our Circuit has set forth a two-part test for determining confidentiality:

> [C]ommercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

*Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974) (footnote omitted). This test was later reaffirmed for situations when the information disclosed is "required" by the government. *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc). Here, Fidelity was required to provide the Army with the unit pricing information in order to compete for Contract-A007. *See* Buchholz Decl. ¶ 11; Hargrave Decl. ¶ 25. Furthermore, as explained below, it is clear that release of the requested information would likely cause substantial harm to Fidelity's competitive position.

When determining whether Exemption 4 applies, actual harm does not need to be demonstrated; evidence supporting the existence of potential competitive injury or economic harm is enough for the exemption to apply. *See Gulf & W. Indus., Inc. v.*

*United States*, 615 F.2d 527, 530 (D.C. Cir. 1979).  In this case, despite Essex's argument that any harm from releasing the unit prices is highly speculative because unit prices are based on multiple factors, the Army has demonstrated that releasing the withheld information would cause substantial competitive harm because the requested information could reveal Fidelity's business strategy and cost structure.  *See Pub. Citizen Health Research Group v. Food & Drug Admin.*, 704 F.2d 1280, 1291 & n.30 (D.C. Cir. 1983); *see also Canadian Commercial Corp. v. Dep't of the Air Force*, 514 F.3d 37, 40 (D.C. Cir. 2008) (in a reverse-FOIA case, holding that line-item pricing in a contract with the Air Force falls within Exemption 4).  As the Army explained, revealing the unit pricing information could:  (1) damage Fidelity's ability to competitively vie for future projects which are the same or similar to Contract-A007; (2) limit Fidelity's bargaining power with its subcontractors; and (3) disclose the economies of scale Fidelity hopes to achieve in contract performance or the pricing strategies and risks Fidelity is willing to accept. *See* Buchholz Decl. ¶¶ 12-13, Attach. 7; Hargrave Decl. ¶¶ 27-28, Attach. 13. Furthermore, Fidelity was the first private entity to be awarded the items in Contract-A007, thus the prices were not known in the industry, further supporting the need to prevent their release.  *See* Hargrave Decl. at Attach. 13.  Finally, as required by 5 U.S.C. § 552(b), the Army has demonstrated that all "reasonably segregable" information was disclosed after deletion of the exempt information, as Contract-A007 was disclosed to Essex with the pricing information blacked out.  *See* Hargrave Decl. Attach. 5.

6

Having concluded that the unit pricing information is confidential, Essex's remaining arguments in opposition are without merit.  First, the plaintiff asserts that Federal Acquisition Regulation ("FAR") § 15.506 mandates disclosure of Fidelity's unit prices.  *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") 6.  Not so!  What Essex fails to acknowledge is that FAR § 15.506 has an exception:  "the debriefing shall not reveal any information . . . exempt from release under the Freedom of Information Act (5 U.S.C. § 552)."  48 C.F.R. § 15.506(e).  In fact, one of the FOIA exemptions explicitly included in FAR § 15.506 is "[c]ommercial and financial information that is privileged or confidential," *id.* at § 15.506(e)(3), language that tracks Exemption 4.  Thus, because the unit pricing information falls within Exemption 4, Essex's argument that the FAR mandates release of that information is inaccurate and must fail.

In addition, the plaintiff's contention that the Department of Defense ("DOD") regularly makes available this sort of unit pricing information is similarly inaccurate. Indeed, to the contrary, DOD recognizes a FOIA exception for commercial or financial information that is submitted in confidence and likely to cause substantial competitive harm.  *See* Pl.'s Opp'n Appx. 18, Dep't of Army FOIA Program; *id.* at 23, Sec'y of Air Force DOD FOIA Program.  Finally, the plaintiff's argument that unit prices for "a business" are "normally provided" because otherwise "the public would buy nothing" is an overly general statement wholly irrelevant to the inquiry here.  *See* Pl.'s Opp'n 18-19. Accordingly, the Court is easily satisfied that the Army properly withheld the unit pricing

information pursuant to Exemption 4 of FOIA.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS the defendant's Motion for

Summary Judgment and DENIES the plaintiff's Cross-Motion for Summary Judgment.

The Court also DISMISSES the action in its entirety.  An order consistent with this

decision  accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge